Dr. Wanda SCHINDLEY, Appellant,

v.

**NORTHEAST TEXAS COMMUNITY COLLEGE, Appellee.**

No. 06–99–00004–CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 9, 1999.

Decided Jan. 5, 2000.

Rehearing Overruled Feb. 23, 2000.

Deborah J. Race, Ireland, Carroll, Kelley, Tyler, Christopher J. Ewert, Colley & Ewert, Tyler, for appellant.

Andrew A. Chance, Sara Hardner Leon, Powell, Chance & Leon, L.L.P., Austin, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Dr. Wanda Schindley appeals the granting of a judgment notwithstanding the verdict (JNOV) in favor of Northeast Texas Community College (NTCC). Schindley filed suit against the college for violating the Texas Whistle Blower's Act.[1] Among other defenses, NTCC pleaded that Schindley had filed suit after the statute of limitations had run on her cause of action.

The jury awarded Schindley $110,099 in actual damages and attorney's fees, and a judgment on the verdict was granted. The trial court then granted a JNOV in favor of NTCC after applying the statute of limitations found in the Whistle Blower's Act. Schindley appeals, contending that limitations did not bar her recovery and

that the discovery rule found in the Whistle Blower's Act tolled the statute of limitations.

Schindley was employed by NTCC from 1991 through 1995. She was paid through various grants. Schindley reported alleged financial improprieties at NTCC to various state officials and law enforcement personnel during April and May of 1995. On June 19, 1995, Dr. Judy Traylor, Schindley's supervisor, wrote Schindley a letter which stated

> As I mentioned to you on the phone this morning, the Coordinating Board officially informed us that your request to continue the Tri–Partnership Self–Improvement Program for Inmates was not approved. Therefore, I must regretfully notify you that your last day of employment will be effective Friday, June 30, 1995.
>
> . . . .
>
> Please let me know if I can assist you in finding new employment for next year.

Schindley wrote a letter dated June 30, 1995, to Dr. Charles Florio, president of NTCC. The letter stated in part:

> My employment at Northeast ends June 30, 1995. I have been continuously employed at Northeast since 1991 under a variety of grant programs. . . . In the past, when one grant ended, my employment continued under another grant program. For this and other reasons, I assume my termination is related to my efforts to stop wrongdoing at Northeast.
>
> . . . .
>
> I had intended to assume my termination was a temporary lay off and that I would apply for and receive a position for which I was the most qualified applicant. Now, I'm not so sure that that will happen, and I fear for other employees at Northeast who cooperated in the investigation of wrongdoing.

Schindley testified that she expected to be shifted to another position, funded by another grant, as was customarily done at

1. Tex. Gov't Code Ann. §§ 554.001–554.010    (Vernon 1994 & Supp.2000).

the college and had provided for her continuous employment at the college between grants. This was not done.

Schindley testified that in April 1996, a colleague relayed a conversation to her, which took place between him and a board member of NTCC, where the board member commented that Schindley needed to be "run off." Schindley stated that this was the first time her suspicions were confirmed that she was terminated due to her whistle-blowing activities.

On May 15, 1996, Schindley sent a letter to the board requesting the right to proceed in accordance with the official grievance process in regard to her June 1995 termination. On June 26, 1996, Schindley filed suit, alleging violations of the Texas Whistle Blower's Act. The case was tried to a jury, which found in favor of Schindley. The jury determined that Schindley became aware that she was terminated in retaliation for reporting what she believed to be violations of the law on April 24, 1996, when she became aware of the conversation between a colleague and a board member. The jury awarded Schindley $53,837 in lost wages.

NTCC filed a motion for a JNOV in which it asserted that, as a matter of law, Schindley's June 30, 1995 letter to Dr. Florio established that she was aware of the action against her which formed a basis for the whistle-blower cause of action alleged in the suit at that time. NTCC contended that the statute of limitations on this cause of action ran from June 30, 1995, and Schindley had filed suit outside the limitations period. NTCC further contended that the discovery rule did not apply in this case. The trial court overruled the motion for JNOV and signed a judgment in favor of Schindley on August 3, 1998. The trial court signed an amended judgment on August 26, 1998, which included an award of attorney's fees to Schindley.

On August 28, 1999, NTCC filed a motion for new trial contending that a directed verdict was required because the evidence showed that Schindley's action was barred by the statute of limitations because she knew she had been terminated in retaliation for her whistle-blowing activities as of June 30, 1995. In support of this contention, NTCC relied heavily on *Villarreal v. Williams*.[2] Alternatively, NTCC contended that Schindley was not entitled to pursue an action under the Texas Whistle Blower's Act because she did not exhaust all administrative remedies in relation to her termination, a condition precedent to filing suit.

Citing *Villarreal*, the trial court signed an order granting the JNOV on October 15, 1998. In the order granting the JNOV, the trial court stated

> [T]he 90–day limitations period for filing suit began to run no later than June 30, 1995, the date of Plaintiff's termination. By June 30th, because of the temporal proximity of her whistleblowing to the termination, and because of the statements in her letter of June 30, 1995, to the college president that she assumed her termination was because of her whistleblowing activities, Plaintiff had "discovered" the violation for limitations purposes. Thus, her suit was filed well after the 90–day period of limitations had expired.

Schindley now appeals, contending that the ninety-day limitations period was tolled by the discovery provision found in Section 554.005 of the Texas Government Code, which requires that an employee file suit no "later than the 90th day after the date on which the alleged violation ... (1) occurred; or (2) was discovered by the employee through reasonable diligence."[3] The jury found that Schindley discovered the violation through reasonable diligence on April 24, 1996, and Schindley contends the trial court erred in disregarding this

**2.** 971 S.W.2d 622 (Tex.App.-San Antonio 1998, no pet.).

**3.** TEX. GOV'T CODE ANN. § 554.005 (Vernon 1994).

finding and entering a JNOV in favor of NTCC.

■ A JNOV is appropriate under two different circumstances: (1) when there is no proof on which the jury could have made its findings or (2) when, as a matter of law, the claim or defense presented is not viable and should never have been presented to the jury.[4]

■ A JNOV based on deficiency of proof is appropriate only when there is no evidence on which the jury could have made its findings. In reviewing such a judgment based on deficiency of the proof, we must view all facts and draw all inferences in a light most favorable to the nonmovant, and ignore all evidence and inferences to the contrary.[5] If there is more than a scintilla of competent evidence to support the jury's finding, the JNOV will be reversed.[6]

■ JNOV is also permitted when a legal principle precludes recovery even though all the allegations are proven.[7]

■ When the basis for a JNOV is the statute of limitations, the party asserting the affirmative defense of limitations has the burden to show from the record that suit is barred by limitations, and if pleaded by the plaintiff, show that the discovery rule does not apply.[8]

The Whistle Blower's Act prohibits a state or local governmental entity from suspending or terminating the employment of a public employee who in good faith reports a violation of the law.[9] The Whistle Blower's Act requires that suit be filed within ninety days of the date of the violation, excluding any time spent by the employee exhausting any grievance or appeals procedures related to the termination that are offered by the employer.[10] The limitations period for initiating the grievance process or filing suit begins to run from either the date on which the alleged violation occurred or was discovered by the employee through reasonable diligence.[11]

The San Antonio Court of Appeals addressed the application of the discovery rule in *Villarreal v. Williams.*[12] In *Villarreal* three police officers were terminated. The reason given by the city for their termination was that the city was having difficulties in paying their salaries due to a budget shortfall. However, the officers believed that the terminations were related to recent whistle-blowing activities. Each officer was aware of his pending termination on July 11, 1995, because each was present at the city council meeting when the terminations were discussed. On July 17, 1995, each officer was sent a letter by the mayor notifying him that the termination would be effective on August 1, 1995. The three officers filed suit on October 30, 1995, alleging violations of the Texas Whistle Blower's Act. The city

---

4. See Spencer v. Eagle Star Ins. Co. of Am., 876 S.W.2d 154, 157 (Tex.1994); Rocor Int'l, Inc. v. National Union Fire Ins. Co., 995 S.W.2d 804, 808 (Tex.App.-San Antonio 1999, no pet. h.).

5. Bray v. McNeely, 682 S.W.2d 615, 617 (Tex.App.-Houston [1st Dist.] 1984, no writ).

6. See Southern States Transp., Inc. v. State, 774 S.W.2d 639, 640 (Tex.1989); Navarette v. Temple Indep. Sch. Dist., 706 S.W.2d 308, 309 (Tex.1986).

7. Stevenson v. Koutzarov, 795 S.W.2d 313 (Tex.App.-Houston [1st Dist.] 1990, writ denied) (recovery barred by statute of limitations).

8. See Burns v. Thomas, 786 S.W.2d 266, 267 (Tex.1990) (movant for summary judgment also has burden to negate discovery rule if pleaded by the nonmovant); Delgado v. Burns, 656 S.W.2d 428, 429 (Tex.1983) (movant for summary judgment has the burden if asserting the defense of limitations).

9. TEX. GOV'T CODE ANN. § 554.002 (Vernon Supp.2000).

10. TEX. GOV'T CODE ANN. § 554.005 (Vernon 1994), § 554.006 (Vernon Supp.2000).

11. TEX. GOV'T CODE ANN. §§ 554.005 & 554.006.

12. 971 S.W.2d 622.

moved for summary judgment, contending that the claims of the officers were time-barred because the cause of action accrued once the officers had unequivocal notice of their termination.

The San Antonio court began its analysis of the issue by attempting to determine when limitations commences for a claim under the Whistle Blower's Act when the plaintiff is given advance notification of the termination. The statute does not address this issue, and no other case law addresses the issue in the context of the Whistle Blower's Act. The court analyzed this issue as it had been addressed by the Texas Supreme Court in the context of the Workers' Compensation Act and the Texas Commission on Human Rights Act. After reviewing cases under each Act, the court concluded that the cause of action under the Whistle Blower's Act accrued when the employee received unequivocal written notice of the termination. The court therefore found the suit by the three police officers to be time-barred because they had filed suit more than ninety days after receiving unequivocal notice of their terminations.

In the alternative, the officers contended that the discovery rule tolled limitations until October 10, 1995, the day they learned that the stated reason for their terminations was pretextual. The court was unconvinced by this argument and stated that

> [O]n July 11, appellants were aware they had been terminated, and were aware of the allegedly wrongful nature of the terminations due to the "temporal proximity" following their whistleblowing activities. Simply put, appellants knew of appellees' allegedly wrongful act and the resulting injuries prior to October 10, 1995. Accrual of appellants' wrongful discharge claims was not delayed merely because the Mayor's statements on October 10 confirmed their existing belief of retaliation.[13]

13. *Villarreal v. Williams,* 971 S.W.2d at 626.

Schindley argues that unlike in *Villarreal,* she was not given unequivocal notice of termination. She bases this on the custom of the college to shift "grant employees," such as Schindley, to other grants while awaiting the start of a new grant to fund their salaries. Additionally, Schindley points out that her immediate supervisor, Dr. Judy Traylor, who had written the letter informing Schindley of her last day of employment, testified at trial that she did not characterize the action as a termination, but instead stated that Schindley's employment was over in terms of the grant and the chance existed for other grants to come along through which Schindley could be employed. Schindley received a letter on June 19, 1995, which unequivocally stated that her last day of employment would be effective Friday, June 30, 1995. Although Schindley may have expected to be shifted to another grant, there was no promise by the college or obligation to do so. Further, Schindley's letter of June 30 to the college president clearly shows that she believed her termination to be related to her whistle-blowing activities and that she believed she may have trouble gaining employment at NTCC in the future. This demonstrated that Schindley had unequivocal knowledge of the adverse action taken against her by her employer as of June 30, 1995. Without the imposition of the discovery rule as found in the whistle-blower statute, limitations would have run on Schindley's claim at the time she filed suit and her claim would be time-barred.

The jury found that Schindley did not discover that NTCC terminated her until April 24, 1996. This was when she was told by another colleague that a NTCC board member thought that Schindley needed to be "run off."

The Whistle Blower's Act includes a statutory discovery rule exception to the limitations period set out in the statute. Limitations may be tolled until the alleged

violation is discovered by the employee through reasonable diligence.[14] Schindley argues that this statutory exception stands alone and should not be further interpreted through precedent describing the nature of the discovery rule as set out in case law. Schindley provides no authority for this position. There is no indication that this was the intent of the statute.

■ Accrual of a cause of action is deferred in cases in which the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred, but may be objectively verified.[15] The discovery rule is a very limited exception to statutes of limitations.[16] The commencement of the limitations period may be determined as a matter of law if reasonable minds could not differ about the conclusion to be drawn from the facts in the record.[17]

The *Villarreal* court found that the officers in that case were aware of the wrongful nature of their terminations due to the temporal proximity of the adverse actions to their whistle-blowing activities. The court further found that the accrual of the officers' claims was not delayed merely because statements were later made which confirmed their existing belief of retaliation. This is the same situation presented by this case.

Schindley contended, and the jury found, that she did not discover the adverse action until her suspicions regarding the retaliatory nature of her discharge were confirmed in April 1996. However,

we find there is no evidence to support this position and find that the statute of limitations ran from June 30, 1995, the date of Schindley's termination.

First, the June 19, 1995 letter terminating Schindley gives unequivocal notice to Schindley that her employment was to be terminated as of June 30, 1995. NTCC made no representations in the letter that Schindley would be shifted to another grant program. The termination was the adverse action required for a violation under the Texas Whistle Blower's Act.

Second, Schindley's termination occurred in close temporal proximity to her whistle-blowing activities. Schindley contends that even though she had suspicions that her termination was related to her whistle-blowing activities at the time of her termination, these suspicions were not confirmed until April 24, 1996, when she became aware that a board member had discussed the need to "run her off." Schindley complains that until April 24, 1996, she had no evidence which could be used in a court of law to substantiate her suspicions, and thus the discovery rule should apply to toll limitations until April 24, 1996. However, the Texas Whistle Blower's Act relieves an employee of the initial burden of proof to show that she was terminated due to whistle-blowing activities if the termination occurs within ninety days of such activity.[18] Schindley made reports to law enforcement officials during April and May of 1995. Her termination occurred in June. The temporal proximity of her termination to her whis-

---

14.  Tex. Gov't Code Ann. § 554.005(2) (Vernon 1994).

15.  *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex.1996).

16.  *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex.1996).

17.  *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex.1998) (discussing application of discovery rule to workers' compensation cases involving latent diseases).

18.  § 554.004. Burden of Proof; Presumption; Affirmative Defense

    (a) A public employee who sues under this chapter has the burden of proof, except that if the suspension or termination of, or adverse personnel action against, a public employee occurs not later than the 90th day after the date on which the employee reports a violation of law, the suspension, termination, or adverse personnel action is presumed, subject to rebuttal, to be because the employee made the report.
Tex. Gov't Code Ann. § 554.004 (Vernon Supp. 2000).

68

tle-blowing activities created a rebuttable presumption that Schindley was terminated in violation of the Texas Whistle Blower's Act.

Finally, Schindley's own admission in her June 30, 1995 letter to Dr. Florio in which she relates her termination due to her whistle-blowing activities, clearly indicates that she had notice of a possible violation of the Texas Whistle Blower's Act.

The trial court found, as matter of law, the application of the discovery rule was error and the statute of limitations ran on the cause of action for violating the Whistle Blower's Act from June 30, 1995. We find that there is no evidence to support the jury's finding that Schindley discovered the violation of the Texas Whistle Blower's Act on April 24, 1996.

The judgment of the trial court is affirmed.