TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00851-CV








Texas A&M University, Geochemical and Environmental Research Group, and the
College of Geosciences and Maritime Studies, Appellants



v.




William H. Chambers, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 97-04588, HONORABLE PAUL DAVIS, JUDGE PRESIDING







 William H. (Hank) Chambers, former lab manager of the Texas A&M Geochemical
and Environmental Research Group (the Research Group), sued Texas A&M University, the
Research Group, and the College of Geoscience and Maritime Studies (collectively Texas A&M)
under the Texas Whistleblower Act for allegedly terminating him in retaliation for a report he
made to Texas A&M's internal audit department. See Tex. Gov't Code Ann. §§ 554.001-.010
(West 1994 & West Supp. 2000). After five days of trial, a jury returned a verdict in favor of
Chambers and awarded him over $195,000 in damages. The trial court rendered judgment on the
verdict.

 Texas A&M now appeals from that judgment contending that the trial court erred
by: (1) including the statutory presumption contained in the Whistleblower Act as an instruction
in the jury charge; (2) excluding Chamber's psychological records; (3) denying its motion to
disregard the jury's award for emotional pain; and (4) refusing to delete the award of prejudgment
interest on the award of damages for future earnings and failing to calculate prejudgment interest
as simple interest. We sustain Texas A&M's first and fourth points of error, reverse the judgment
of the trial court, and remand the cause for new trial. Because our resolution of Texas A&M's
first point of error renders points two and three moot, we do not consider the merits of those
contentions.


FACTUAL BACKGROUND The Research Group is a team of highly specialized scientists who assist federal
agencies and private businesses by conducting various research projects on a contractual basis. 
In 1992, the Research Group was hired by Creosote Council II--a trade association for producers
of the wood-pesticide creosote--to analyze samples of manufactured creosote and submit its
findings to the Environmental Protection Agency for product registration and licensing purposes. 
In order to ensure that the Creosote Council companies would be able to maintain their licenses
to manufacture and sell creosote, the Research Group agreed to conduct its study in compliance
with the good laboratory practice regulations of the Federal Insecticide Fungicide and Rodenticide
Act (FIFRA) and certify its compliance in writing to the Creosote Council.

 The Research Group began the creosote study in 1992. In the summer of 1996, the
Research Group was in the last stages of performance under the contract when an executive at the
Creosote Council became concerned about the scientists' lab practices. Consequently, the
Creosote Council hired Kristin Hoover, an independent auditor, to evaluate the Research Group's
work. Her findings formed the basis of this lawsuit.

 Hoover's report to the Creosote Council reflected that the Research Group had
failed to comply with the good laboratory practice regulations of FIFRA in several ways during
the creosote study. Hoover also found that Research Group personnel, specifically Dr. Mahlon
Kennicutt, had untruthfully certified in writing to the Creosote Council that the Research Group
had conducted its research in compliance with FIFRA. When Chambers discovered Hoover's
findings, he became concerned that the false acknowledgments Dr. Kennicutt had made to the
Creosote Council amounted to illegal behavior. He reported these concerns to the Texas A&M
Department of Internal Audit in August of 1996. Dr. Kennicutt was Chambers' direct supervisor
at the time.

 Over the next several months, Dr. Kennicutt implemented several changes at the
Research Group, some of which directly affected Chambers. Chambers' signatory authority was
removed from the accounts he supervised and he was required to meet weekly with Dr. Kennicutt
to go over the details of his assignments even though he was in a managerial position. Chambers
believes that these actions were adverse to his employment with the Research Group. He further
alleges that his eventual termination in April of 1997 was a direct result of his report to Internal
Audit of what he believed was illegal behavior in the creosote study.

 Texas A&M, however, presented evidence at trial of ongoing concerns about
Chambers' work performance and several unsuccessful attempts to help him remedy the problems
that allegedly riddled his research projects. Dr. Kennicutt testified at trial that he did not become
aware of Chambers' disclosures to Internal Audit until this litigation began and thus did not feel
any personal resentment towards Chambers during the time period in question. He even requested
that Chambers receive a salary raise in October of 1996. Texas A&M contends that Chambers
was terminated because his job performance never improved.


DISCUSSION Texas A&M complains in its first point of error that the trial court erred in
including the statutory presumption of retaliation in its charge to the jury. The court instructed
the jury as follows: "If the termination of, or adverse personnel action against, a public employee
occurs within 90 days after the date on which the employee reports a violation of law, the
termination or adverse personnel action is presumed, subject to rebuttal, to be because the
employee made the report." This instruction tracks the language of the Whistleblower Act. See
Tex. Gov't Code Ann. § 554.004 (West Supp. 2000). Texas A&M contends that including the
proof in the charge was an improper comment on the weight of the evidence that incorrectly
shifted the burden of proof to the defendants.(1)

 Because a trial court has considerable discretion in framing a jury charge, Redwine
v. AAA Life Insurance Co., 852 S.W.2d 10, 14 (Tex. App.--Dallas 1993, no writ), we must
determine only whether the court acted without reference to any guiding rules or principles. 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). Texas Rule of
Civil Procedure 277 authorizes the court to submit explanatory instructions and definitions that
will assist the jury in answering the jury questions. Tex. R. Civ. P. 277; Redwine, 852 S.W.2d
at 14; Sanders v. Davila, 593 S.W.2d 127, 129 (Tex. Civ. App.--Amarillo 1979, writ ref'd
n.r.e.). "Still, an instruction must be correct to be a proper one authorized by the rule." Sanders,
593 S.W.2d at 129.

 A presumption "may not properly be the subject of an instruction to the jury."
Armstrong v. West Tex. Rig Co., 339 S.W.2d 69, 74 (Tex. Civ. App.--El Paso 1960, writ ref'd
n.r.e.); see also Glover v. Henry, 749 S.W.2d 502, 504 (Tex. App.--Eastland 1988, no writ);
Sanders, 593 S.W.2d at 130. Its inclusion is improper because the sole effect of a presumption
is to fix the burden of producing evidence. United Founders Life Ins. Co. v. Carey, 347 S.W.2d
295, 307 (Tex. Civ. App.--Austin 1961), rev'd on other grounds, 363 S.W.2d 236 (Tex. 1962);
Armstrong, 339 S.W.2d at 74. A presumption is nothing more than a rule for the guidance of the
trial judge in locating the burden of production at a particular time. United Founders, 347 S.W.2d
at 307; Armstrong, 339 S.W.2d at 74. In whistleblower cases, the statutory presumption of
retaliation relieves the plaintiff of the initial burden to prove that he was terminated for reporting
allegedly illegal activities. Schindley v. Northeast Tex. Cmty. Coll., 13 S.W.3d 62, 67 (Tex.
App.--Texarkana 2000, pet. denied). This rule of procedure aids the plaintiff because the
evidence necessary to establish the plaintiff's case is often exclusively within the possession of the
defendant. Robertson Tank Lines, Inc. v. Van Cleave, 468 S.W.2d 354, 358 (Tex. 1971). The
purpose of the presumption is to "smoke out" the defendant and compel her to disclose the facts
within her knowledge. Id. When, however, the defendant discloses the facts in her possession
and such evidence is sufficient to support a finding of non-retaliation, the case proceeds as if no
presumption ever existed. See id.; Texas Natural Res. Conservation Comm'n v. McDill, 914
S.W.2d 718, 724 (Tex. App.--Austin 1996, no writ); Garza v. City of Mission, 684 S.W.2d 148,
152 (Tex. App.--Corpus Christi 1984, writ dism'd w.o.j.). "[T]here is no presumption aiding the
plaintiff after the presumption is rebutted by positive evidence to the contrary." Robertson, 468
S.W.2d at 358.

 In the instant case, Texas A&M presented ample testimony and documents to rebut
the presumption that its motive for firing Chambers was based on Chambers' report to Internal
Audit. Dr. Kennicutt testified that he was unaware of Chambers' report to Internal Audit about
the creosote matter. He and the Resource Group's chief financial officer, Jeannie Baggett,
testified that they were having difficulty getting Chambers to meet deadlines and provide complete
and accurate information when they requested it. Baggett finally made an official complaint to the
Research Group's general director. Memos were produced that reflected Dr. Kennicutt's concerns
about Chambers' work performance throughout the fall of 1996 and spring of 1997; other
documents corroborated the testimony that Dr. Kennicutt requested a raise for Chambers during
this time period.

 The evidence produced by Texas A&M at trial rebutted the presumption that
Chambers was fired for reporting the creosote problems to Internal Audit. Chambers argues in
his brief, however, that there is no quantitative measure in Texas for determining whether this
rebutting evidence was sufficient to overcome the statutory presumption and that we must defer
to the trial court's decision to allow the presumption to remain active in the case. This contention
is inconsistent with Texas case law.

 Texas courts agree that a presumption is rebutted when "positive evidence to the
contrary" is introduced. See id.; Southland Life Ins. Co. v. Greenwade, 159 S.W.2d 854, 858
(Tex. 1942). The supreme court explained: "[A] presumption is an artificial thing, a mere house
of cards, which one moment stands with sufficient force to determine an issue, but at the next, by
reason of the slightest rebutting evidence, topples utterly out of consideration of the trier of facts." 
Combined Am. Ins. Co. v. Blanton, 353 S.W.2d 847, 849 (Tex. 1962). In Texas Natural
Resource Conservation Commission v. McDill, we held that the Commission rebutted the
presumption of retaliation when it introduced evidence at trial "suggesting no connection between
McDill's report and his discharge . . . ." McDill, 914 S.W.2d at 724. That evidence included
testimony from the plaintiff's co-workers and supervisors and various documents relating to
complaints made in relation to the plaintiff's conduct at work. Similarly, in Garza v. City of
Mission, the court of appeals held that the defendant introduced sufficient evidence to rebut the
presumption of retaliation when the plaintiff's supervisors testified that they had no knowledge of
the plaintiff's whistleblowing before his termination. Garza, 684 S.W.2d at 152-53. The
evidence produced by Texas A&M strongly parallels the evidence held sufficient to rebut the
presumption of retaliation in those two cases. Because Texas A&M produced evidence to rebut
the presumption of the Whistleblower Act, the presumption should have disappeared entirely. See
McDill, 914 S.W.2d at 724. Instead of vanishing, however, the statutory presumption appeared
verbatim in the jury charge.

 Including a presumption in the jury charge which has been rebutted by
controverting facts is an improper comment on the weight of the evidence. Glover, 749 S.W.2d
at 504-05. At oral argument, Chambers conceded that it was error to submit the presumption of
retaliation to the jury. He maintains, however, that its submission did not amount to reversible
error.

 Reversal is required if an improper comment on the weight of the evidence was
calculated to cause and probably did cause the rendition of an improper judgment. Tex. R. App.
P. 44.1(a)(1); Redwine, 852 S.W.2d at 14. The inclusion of the rebuttable presumption of
retaliation in the charge placed a heavier burden of proof on Texas A&M than was required by
law. See Graves v. Komet, 982 S.W.2d 551, 554-55 (Tex. App.--San Antonio 1998, no pet.). 
"An instruction that misstates the law cannot be expected to produce a correct verdict." Sanders,
593 S.W.2d at 130. The evidence in this case was vigorously disputed, and the jury might well
have found in favor of either of the parties absent the presumption instruction. A superfluous
instruction is more likely to improperly influence a jury in a close case. Reinhart v. Young, 906
S.W.2d 471, 473 (Tex. 1995). Instructing the jury to presume that Texas A&M unlawfully
retaliated against Chambers could have persuaded the jury to find in favor of Chambers. We
must, therefore, reverse. See Redwine, 852 S.W.2d at 14. Because our resolution of Texas
A&M's first point of error results in reversal, points of error two and three need not be
considered.(2)


CONCLUSION


 We hold that including the presumption in the jury charge was error that probably
caused the rendition of an improper judgment. It was also error to award prejudgment interest on
future earnings damages and to compound such interest annually. We need not decide the other
two issues complained of on appeal. We reverse the trial court's judgment and remand this cause
to the trial court for a new trial.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Reversed and Remanded

Filed: November 2, 2000

Publish


1. To preserve a complaint for appellate review, a party must make a timely objection to
the trial court and state specific grounds for the desired ruling if the specific grounds are not
apparent from the context. Redwine v. AAA Life Ins. Co., 852 S.W.2d 10, 13 (Tex. App.--Dallas
1993, no writ). It is insufficient to object to a jury charge by stating only that the instruction
constitutes a comment on the weight of the evidence. Id. Texas A&M, however, objected to the
inclusion of the presumption in the jury charge by stating that it would improperly shift the burden
of proof to Texas A&M because the presumption should have dropped out of the case. This
objection was specific enough to preserve Texas A&M's complaint for appellate review. See id.
2. The jury awarded Chambers damages for past lost wages and benefits, future lost wages
and benefits, and emotional pain. The trial court rendered judgment accordingly, adding
prejudgment interest on the entire award at the rate of ten percent per annum. Texas A&M filed
a motion to modify, requesting that the court exclude Chambers' lost future earnings from the
prejudgment interest calculation and asking the court to eliminate the annual compounding. The
trial court overruled this motion by operation of law. See Tex. R. Civ. P. 329b(b). The parties
agree that the trial court erred in failing to modify the judgment to exclude prejudgment interest
on the jury's award of future lost earnings and to recalculate prejudgment interest as simple
interest instead of compound interest.


 We note that the supreme court addressed this issue in Johnson & Higgins of Texas, Inc.
v. Kenneco Energy, Inc., 962 S.W.2d 507 (Tex. 1998). In that case, the court held that
prejudgment interest on damage awards is to be calculated as simple interest. Id. at 532. In
addition, in a case such as this, prejudgment interest should not be calculated on a damage award
for future lost wages and benefits. See Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549,
554 (Tex. 1985). Prejudgment interest is awarded to compensate the injured party for the lost use
of money; that justification does not apply to money which has yet to be earned. See id. at 554-55.

 Including a presumption in the jury charge which has been rebutted by
controverting facts is an improper comment on the weight of the evidence. Glover, 749 S.W.2d
at 504-05. At oral argument, Chambers conceded that it was error to submit the presumption of
retaliation to the jury. He maintains, however, that its submission did not amount to reversible
error.

 Reversal is required if an improper comment on the weight of the evidence was
calculated to cause and probably did cause the rendition of an improper judgment. Tex. R. App.
P. 44.1(a)(1); Redwine, 852 S.W.2d at 14. The inclusion of the rebuttable presumption of
retaliation in the charge placed a heavier burden of proof on Texas A&M than was required by
law. See Graves v. Komet, 982 S.W.2d 551, 554-55 (Tex. App.--San Antonio 1998, no pet.). 
"An instruction that misstates the law cannot be expected to produce a correct verdict." Sanders,
593 S.W.2d at 130. The evidence in this case was vigorously disputed, and the jury might well
have found in favor of either of the parties absent the presumption instruction. A superfluous
instruction is more likely to improperly influence a jury in a close case. Reinhart v. Young, 906
S.W.2d 471, 473 (Tex. 1995). Instructing the jury to presume that Texas A&M unlawfully
retaliated against Chambers could have persuaded the jury to find in favor of Chambers. We
must, therefore, reverse. See Redwine, 852 S.W.2d at 14. Because our resolution of Texas
A&M's first point of error results in reversal, points o