**TEXAS SOUTHERN UNIVERSITY, Appellant,**

v.

**Charles David CARTER, Appellee.**

**No. 01–01–00655–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 22, 2002.

David E. Jenkins, General Litigation Division, Austin, for Appellant.

G. Scott Fiddler, Law Office of G. Scott Fiddler, P.C., Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices RADACK and SMITH.*

## OPINION

MICHAEL SCHNEIDER, Chief Justice.

Texas Southern University (TSU) brings this interlocutory appeal[1] from the denial of its plea to the jurisdiction. The issues presented are: (1) whether this Court has jurisdiction to consider TSU's interlocu-

tory appeal; and (2) whether the plaintiff below timely filed a grievance against TSU under the Whistleblower Act.[2] We affirm.

## I. Background

The appellee/plaintiff, Charles David Carter, began working for TSU in 1991 as a temporary accountant. In 1992, he was hired as an Accounting Information Analyst. From that position, he was promoted to Acting Director of Materials Management, Director of Materials Management, and Interim Assistant Vice President for Facilities Planning. In August 1997, the Comptroller at TSU resigned. In January 1998, Carter was given the job of Interim Comptroller.

Before becoming Interim Comptroller, Carter had identified what he believed to be inconsistencies, omissions, inaccuracies, and illegalities in the accounting practices at TSU. According to his petition, Carter had attempted to resolve these problems internally at TSU, but had met with "opposition and retaliation."

On March 12, 1998, Carter sent a letter to the Texas State Auditor's Office, in which letter he reported what he believed were violations of the law that he had discovered while working as Interim Comptroller. In the letter, he stated, "I have been informed by a President's cabinet staff member that I have been targeted for dismissal by the University's Administration. . . ." His letter to the State Auditor further provided as follows:

> Accordingly, I am seeking protection under [the] State statute governing Whistle Blowing Policy, pending verification of violations of State policy as well as

---

* The Honorable Jackson B. Smith, Jr., retired justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

**1.** See TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2002) (giving appellate courts jurisdiction over interlocu-

tory orders that grant or deny a plea to the jurisdiction by a governmental unit).

**2.** See TEX. GOV'T CODE ANN. §§ 554.001–554.010 (Vernon 1994 & Supp.2002).

not being provided the opportunity for success in the Comptroller position. I was, in essence[,] not the most qualified internal candidate for, yet was forced to accept in an attempt by TSU management to effect constructive discharge.

The State Auditor's Office then conducted an audit of TSU. Carter met with the auditors during the last week of July 1998 and reported his allegations to them. A week later, on July 31, 1998, Carter was notified by TSU that he was being terminated effective August 31, 1998.

On August 11, 1998, Carter invoked the TSU grievance procedure, but no final decision was made within 60 days, thus allowing Carter to sue under the Whistleblower Act. TEX. GOV'T CODE ANN. § 554.006(d) (Vernon Supp.2002). On October 26, 1998, Carter filed this suit. In sum, Carter's position, as set forth in his March 12 letter to the State Auditor, is that he was forced to accept the position of Interim Comptroller, even though he was not the most qualified person to hold the position, so that TSU could fire him when he failed. Stated another way, Carter contends that being named Interim Comptroller was an attempt to "constructively discharge" him

in retaliation for reporting alleged illegalities in TSU's accounting practices.

## II. Law and Analysis

### A. Can TSU Pursue an Interlocutory Appeal?

■ TSU filed a plea to the jurisdiction, alleging that the trial court did not have subject matter jurisdiction over Carter's suit. Specifically, TSU claimed that Carter had not timely initiated a grievance under the Whistleblower Act[3] and that the failure to do so was jurisdictional. The trial court denied TSU's plea to the jurisdiction, and TSU filed this interlocutory appeal.

Carter argues that the failure to timely initiate a grievance is not jurisdictional and, as a result, TSU's plea to the jurisdiction was, in reality, a motion for summary judgment based on limitations. Absent circumstances not present in this case,[4] we have no jurisdiction over the denial of a summary judgment motion. *See Novak v. Stevens,* 596 S.W.2d 848, 848 (Tex.1980). Therefore, Carter requests that we dismiss TSU's appeal for lack of jurisdiction. The issue we must first resolve is whether the timely initiation of a grievance under the Whistleblower Act is jurisdictional. If the

**3.** The Whistleblower Act provides the following limitations provisions:
  (a) A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter.
  (b) The employee must invoke the applicable grievance or appeal procedures not later than the 90th day after the date on which the alleged violation of this chapter:
    (1) occurred; or
    (2) was discovered by the employee through reasonable diligence.
TEX. GOV'T CODE ANN. § 554.006(b) (Vernon Supp.2002).
  Except as provided by Section 554.006, a public employee who seeks relief under this

chapter must sue not later than the 90th day after the date on which the alleged violation of this chapter:
    (1) occurred; or
    (2) was discovered by the employee through reasonable diligence.
TEX. GOV'T CODE ANN. § 554.005 (Vernon Supp. 2002).

**4.** We have jurisdiction over the denial of a motion for summary judgment based on an assertion of immunity by an individual who is an officer or employee of the State or a political subdivision of the State. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (VERNON SUPP. 2002). This case, however, does not involve a claim of immunity by an individual.

limitations provisions of the Whistleblower Act are jurisdictional, this Court has jurisdiction to consider TSU's appeal pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8).

This Court has held that compliance with section 554.006 of the Whistleblower Act is jurisdictional. *See Univ. of Tex. Med. Branch v. Hohman*, 6 S.W.3d 767, 774 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.). In so holding, this Court relied on the principle of law that requires a party suing on a statutory cause of action to comply with all administrative prerequisites and makes such prerequisites jurisdictional. *See Mingus v. Wadley*, 115 Tex. 551, 285 S.W. 1084, 1087 (1926).

However, in *Dubai Petroleum Co. v. Kazi*, the Supreme Court overruled *Mingus v. Wadley* and held that the failure to allege and prove a statutory prerequisite to a statutory cause of action was not a jurisdictional defect. 12 S.W.3d 71, 76 (Tex.2000). The court was concerned that labeling all such "irregularities" as jurisdictional would make the judgments in those cases perpetually vulnerable to collateral attack. *Id.* at 76.

Since *Kazi* was decided, three courts have indirectly addressed the issue of whether the limitations provisions of the Whistleblower Act are jurisdictional. In *University of Houston v. Elthon*, 9 S.W.3d 351, 356 (Tex.App.-Houston [14th Dist.] pet. dism'd w.o.j.), the Fourteenth Court of Appeals, without any discussion of *Kazi*, held that the limitations provisions of the Whistleblower Act were merely affirmative defenses and should have been raised by summary judgment, rather than by a plea to the jurisdiction. In support of its holding, the court stated, "There exists a long line of cases demonstrating that a motion for summary judgment is the proper avenue for raising the statute of limitations

defense under the Texas Whistleblower Act[,]" and cited a string of cases in which a limitations defense under the Whistleblower Act had been raised by a motion for summary judgment. *Id.* at 356–57.

We disagree with the reasoning of the *Elthon* court. That court assumes that, because limitations under the Whistleblower Act is often raised by summary judgment, then it *must* be raised by summary judgment, and if it must be raised by summary judgment, it is not jurisdictional. However, subject matter jurisdiction can never be waived, and standing can be challenged in many different ways, at many different points in the litigation. *See Drilltec, Inc. v. Remp*, 64 S.W.3d 212, 215 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (noting that subject matter jurisdiction can be attacked by plea to the jurisdiction, motion for summary judgment, and special exception, among other means). Following this reasoning, we cannot agree with the Fourteenth Court's conclusion that limitations under the Whistleblower Act must be attacked by summary judgment and, thus, must be nonjurisdictional. The Fourteenth Court simply did not address the preliminary issue of whether the limitations provisions are jurisdictional, and we will not presume they are nonjurisdictional simply because they are often raised in a motion for summary judgment.

Following *Elthon*, the Fort Worth Court of Appeals also held that limitations under the Whistleblower Act must be raised by a motion for summary judgment, not a plea to the jurisdiction. *Castleberry Indep. Sch. Dist. v. Doe*, 35 S.W.3d 777, 782 (Tex. App.-Fort Worth, pet. dism'd w.o.j.). As in *Elthon*, there was no discussion of whether the limitations provisions of the Whistleblower Act were jurisdictional (meaning they can be raised by plea to the

jurisdiction), nor was there any analysis of, or citation to, *Kazi*.

Finally, in *Texas Department of Mental Health and Mental Retardation v. Olofsson*, 59 S.W.3d 831(Tex.App.-Austin 2001, no pet.), the Austin Court of Appeals, citing *Elthon*, also held that limitations under the Whistleblower Act were not grounds for a plea to the jurisdiction. The *Olofsson* court also cited to *Kazi*, but it provided no analysis to show how it concluded that *Kazi* applied to the case. 59 S.W.3d at 834.

Because the issue is one of jurisdiction, we are compelled to address whether *Kazi* has, in effect, overruled this Court's holding in *Hohman*. *See Protestants v. Am. Pubs, Inc.*, 787 S.W.2d 111, 113 (Tex.App.-Houston [1st Dist.] 1990, writ denied) (holding court has a duty to determine its jurisdiction over a controversy). We must decide whether, after *Kazi*, the limitations provisions of the Whistleblower Act are jurisdictional.

In *Kazi*, the plaintiffs, survivors of an Indian citizen, filed a wrongful death action, basing their claim on section 71.031 of the Texas Civil Practices and Remedies Code, which permits a suit for the personal injury or wrongful death of a citizen of a foreign country if the deceased's country has "equal treaty rights" with the United States. 12 S.W.3d at 71. The defendant, Dubai Petroleum Corporation, moved to dismiss the suit for lack of subject matter jurisdiction, alleging that India did not have "equal treaty rights" with the United States. *Id.* The trial court agreed and dismissed the suit. *Id.* The court of appeals concluded that, in order to confer subject matter jurisdiction on the trial court, plaintiffs had to satisfy all the requisites of section 71.031. *Id.* at 76. The court of appeals then held that, because India's treaty rights were sufficiently similar, the requirements of section 71.031 had

been met. *Id.* at 75–76. The supreme court affirmed the court of appeals, but for a different reason. *Id.* The supreme court held that the statutory prerequisite of establishing "equal treaty rights" was not a jurisdictional requirement. *Id.* at 76. The supreme court reasoned that "[t]he trial court ... had jurisdiction because a claim for wrongful death was within its constitutional jurisdiction, not because the plaintiffs satisfied all the grounds listed in former section 71.031(a)." *Id.*

Therein lies the key distinction between this case and *Kazi*. Unlike wrongful death, there is no common law Whistleblower cause of action. *See Austin v. Healthtrust, Inc.—The Hosp. Co.*, 967 S.W.2d 400, 403 (Tex.1998). Similarly, the trial court in this case has no "constitutional jurisdiction" in a suit against the State, absent a waiver of sovereign immunity. *See Fed. Sign v. Texas So. Univ.*, 951 S.W.2d 401, 405 (Tex.1997) (recognizing that sovereign immunity, unless waived, protects the State, its agencies, and officials from lawsuits for damages, absent legislative consent to sue).

The Whistleblower Act provides as follows:

> A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.

TEX. GOV'T CODE ANN. § 554.0035 (Vernon Supp.2002).

To "allege a violation" of the Whistleblower Act, "[a] public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse

personnel action *before suing under this chapter.*" TEX. GOV'T CODE ANN. § 554.006(a) (Vernon Supp.2002) (emphasis added). Such a grievance must be initiated within 90 days from the date the alleged violation occurs or was discovered by the employee through reasonable diligence. TEX. GOV'T CODE ANN. § 554.006(b) (Vernon Supp.2002).

In sum, the Whistleblower Act creates the cause of action sued upon,[5] provides procedural prerequisites for filing suit,[6] and then waives sovereign immunity from suit once those requirements have been met.[7] The trial court has no subject matter jurisdiction over the suit unless the State's sovereign immunity from suit is waived, and the State's sovereign immunity from suit is not waived unless the statutory prerequisites for filing suit have been met. As such, this case is distinguishable from *Kazi,* in which sovereign immunity was not an issue.

Furthermore, the *Kazi* court notes that the failure to establish a statutory prerequisite goes, in reality, "to the right of the plaintiff to relief rather than to the jurisdiction of the court to afford it." 12 S.W.3d at 77. The Whistleblower Statute waives sovereign immunity from suit "to the extent of liability for the relief allowed under this chapter ..." TEX. GOV'T CODE ANN. § 554.0035 (Vernon Supp.2002). If the plaintiff has no right to relief under the statute, because the statutory prerequisites have not been met, then there is no waiver of immunity by the State, i.e., the trial court has no jurisdiction.

Therefore, we conclude that the statutory prerequisite that the plaintiff in a Whistleblower action timely initiate a grievance

is a jurisdictional requirement, the failure of which may be challenged by way of a plea to the jurisdiction, and that *Kazi* does not overrule this Court's holding in *Hohman.*

We turn now to the merits of TSU's appeal.

**B. Did Carter Timely Initiate a Grievance Against TSU?**

■ The Whistleblower Act gives plaintiffs 90 days to file a grievance; the 90 days to file a grievance runs from the date the alleged violation of the Act occurs or was discovered by the employee through reasonable diligence to file a grievance. *See* TEX. GOV'T CODE ANN. § 554.006(b). Carter initiated the grievance process against TSU on August 11, 1999. TSU contends that Carter's grievance was untimely because he knew or should have known of the acts giving rise to his cause of action by March 12, 1999, the date that he wrote to the State Auditor's office and requested protection under the Whistleblower Act. Carter responds that the limitations period did not begin to run until July 30, 1999, the date he was informed that his appointment as interim comptroller would not be renewed.

TSU relies on the case of *Schindley v. Northeast Texas Community College,* 13 S.W.3d 62, 66 (Tex.App.-Texarkana 2000, pet. denied). In *Schindley,* the plaintiff was informed in June 1995 that her employment was being terminated. *Id.* at 67. Nevertheless, the plaintiff did not file suit until April 1996, when she discovered that a board member had discussed the need to "run her off." *Id.* The plaintiff argued that limitations were tolled until she "dis-

---

5.  *See* TEX. GOV'T CODE ANN. § 554.002 (Vernon Supp.2002).

6.  *See* TEX. GOV'T CODE ANN. §§ 554.005–.006 (Vernon Supp.2002).

7.  *See* TEX. GOV'T CODE ANN. § 554.0035 (Vernon Supp.2002).

covered" that she had, in fact, been terminated for her whistleblowing activities. *Id.* The court of appeals disagreed and held that the limitations period began on June 30, the date the plaintiff was fired. *See id.*

*Schindley,* however, does not stand for the proposition that a plaintiff must initiate a grievance within 90 days from the date the plaintiff *suspects* retaliation. In *Schindley,* the statute began to run with the alleged violation of the act, i.e., the plaintiff's termination. *Id.*

The real issue in this case is when the alleged violation of the act occurred, or, more specifically, when was the plaintiff was "suspended or terminated or . . . subjected to an adverse personnel action in violation of [the Act]." TEX. GOV'T CODE § 554.003(a)(Vernon Supp.2002). Clearly, the "alleged violation" in this case was Carter's termination on August 31, 1998, which he became aware of by letter dated July 31, 1998. There was no "adverse personnel action" triggering Carter's rights under the Whistleblower statute before that date, though Carter, as early as April 1998, suspected that such action was forthcoming.

In *UTMB v. Hohman,* the defendant/hospital pointed to several retaliatory acts alleged by the plaintiffs to have occurred before their constructive discharge and argued that limitations ran from these earlier acts. This Court noted that the "alleged violation" of the act was the constructive discharge itself, not the earlier retaliatory acts. 6 S.W.3d at 774. Although the present case is not a constructive discharge case, the reasoning behind *Hohman* is applicable to the case at hand. Limitations runs from the date the plaintiff suffers some "adverse personnel action" or discovers through reasonable diligence that such "adverse personnel action"

has occurred. *See* TEX. GOV'T CODE ANN. § 554.003(a) (Vernon Supp.2002).

Therefore, we hold that limitations in this case began to run on July 31, 1998, the date Carter was informed that he was being terminated. As such, we conclude that his grievance was timely filed and affirm the trial court's order denying TSU's plea to the jurisdiction.