Opinion issued August 22, 2002 

 

 















In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00655-CV






TEXAS SOUTHERN UNIVERSITY, Appellant


V.


CHARLES DAVID CARTER, Appellee





On Appeal from the 127th District Court

Harris County, Texas

Trial Court Cause No. 1998-50486





O P I N I O N


 Texas Southern University (TSU) brings this interlocutory appeal (1) from the
denial of its plea to the jurisdiction. The issues presented are: (1) whether this Court
has jurisdiction to consider TSU's interlocutory appeal; and (2) whether the plaintiff
below timely filed a grievance against TSU under the Whistleblower Act. (2) We
affirm.

I. Background

 The appellee/plaintiff, Charles David Carter, began working for TSU in 1991
as a temporary accountant. In 1992, he was hired as an Accounting Information
Analyst. From that position, he was promoted to Acting Director of Materials
Management, Director of Materials Management, and Interim Assistant Vice
President for Facilities Planning. In August 1997, the Comptroller at TSU resigned. 
In January 1998, Carter was given the job of Interim Comptroller.

 Before becoming Interim Comptroller, Carter had identified what he believed
to be inconsistencies, omissions, inaccuracies, and illegalities in the accounting
practices at TSU. According to his petition, Carter had attempted to resolve these
problems internally at TSU, but had met with "opposition and retaliation."

 On March 12, 1998, Carter sent a letter to the Texas State Auditor's Office, in
which letter he reported what he believed were violations of the law that he had
discovered while working as Interim Comptroller. In the letter, he stated, "I have
been informed by a President's cabinet staff member that I have been targeted for
dismissal by the University's Administration . . . ." His letter to the State Auditor
further provided as follows:

 Accordingly, I am seeking protection under [the] State statute governing
Whistle Blowing Policy, pending verification of violations of State
policy as well as not being provided the opportunity for success in the
Comptroller position. I was, in essence[,] not the most qualified internal
candidate for, yet was forced to accept in an attempt by TSU
management to effect constructive discharge.


 The State Auditor's Office then conducted an audit of TSU. Carter met with
the auditors during the last week of July 1998 and reported his allegations to them. 
A week later, on July 31, 1998, Carter was notified by TSU that he was being
terminated effective August 31, 1998.

 On August 11, 1998, Carter invoked the TSU grievance procedure, but no final
decision was made within 60 days, thus allowing Carter to sue under the
Whistleblower Act. Tex. Gov't Code Ann. § 554.006(d) (Vernon Supp. 2002). On
October 26, 1998, Carter filed this suit. In sum, Carter's position, as set forth in his
March 12 letter to the State Auditor, is that he was forced to accept the position of
Interim Comptroller, even though he was not the most qualified person to hold the
position, so that TSU could fire him when he failed. Stated another way, Carter
contends that being named Interim Comptroller was an attempt to "constructively
discharge" him in retaliation for reporting alleged illegalities in TSU's accounting
practices.

II. Law and Analysis

 A. Can TSU Pursue an Interlocutory Appeal?

 TSU filed a plea to the jurisdiction, alleging that the trial court did not have
subject matter jurisdiction over Carter's suit. Specifically, TSU claimed that Carter
had not timely initiated a grievance under the Whistleblower Act (3) and that the failure
to do so was jurisdictional. The trial court denied TSU's plea to the jurisdiction, and
TSU filed this interlocutory appeal.

 Carter argues that the failure to timely initiate a grievance is not jurisdictional
and, as a result, TSU's plea to the jurisdiction was, in reality, a motion for summary
judgment based on limitations. Absent circumstances not present in this case (4), we
have no jurisdiction over the denial of a summary judgment motion. See Novak v.
Stevens, 596 S.W.2d 848, 848 (Tex. 1980). Therefore, Carter requests that we
dismiss TSU's appeal for lack of jurisdiction. The issue we must first resolve is
whether the timely initiation of a grievance under the Whistleblower Act is
jurisdictional. If the limitations provisions of the Whistleblower Act are
jurisdictional, this Court has jurisdiction to consider TSU's appeal pursuant to Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).

 This Court has held that compliance with section 554.006 of the Whistleblower
Act is jurisdictional. See Univ. of Tex. Med. Branch v. Hohman, 6 S.W.3d 767, 774 

(Tex. App.--Houston [1st Dist.] 1999, pet. dism'd w.o.j.). In so holding, this Court 
relied on the principle of law that requires a party suing on a statutory cause of action
to comply with all administrative prerequisites and makes such prerequisites
jurisdictional. See Mingus v. Wadley, 285 S.W. 1084, 1087 (1926).

 However, in Dubai Petroleum Co. v. Kazi, the Supreme Court overruled
Mingus v. Wadley and held that the failure to allege and prove a statutory prerequisite
to a statutory cause of action was not a jurisdictional defect. 12 S.W.3d 71, 76 (Tex.
2000). The court was concerned that labeling all such "irregularities" as
jurisdictional would make the judgments in those cases perpetually vulnerable to
collateral attack. Id. at 76.

 Since Kazi was decided, three courts have indirectly addressed the issue of
whether the limitations provisions of the Whistleblower Act are jurisdictional. In
University of Houston v. Elthon, 9 S.W.3d 351, 356 (Tex. App.--Houston [14th
Dist.] pet. dism'd w.o.j.), the Fourteenth Court of Appeals, without any discussion of
Kazi, held that the limitations provisions of the Whistleblower Act were merely
affirmative defenses and should have been raised by summary judgment, rather than
by a plea to the jurisdiction. In support of its holding, the court stated, "There exists
a long line of cases demonstrating that a motion for summary judgment is the proper
avenue for raising the statute of limitations defense under the Texas Whistleblower
Act[,]" and cited a string of cases in which a limitations defense under the
Whistleblower Act had been raised by a motion for summary judgment. Id. at 356-57.

 We disagree with the reasoning of the Elthon court. That court assumes that,
because limitations under the Whistleblower Act is often raised by summary
judgment, then it must be raised by summary judgment, and if it must be raised by
summary judgment, it is not jurisdictional. However, subject matter jurisdiction can
never be waived, and standing can be challenged in many different ways, at many
different points in the litigation. See Drilltec, Inc. v. Remp, 64 S.W.3d 212, 215 (Tex.
App.--Houston [14th Dist.] 2001, no pet.) (noting that subject matter jurisdiction can
be attacked by plea to the jurisdiction, motion for summary judgment, and special
exception, among other means). Following this reasoning, we cannot agree with the
Fourteenth Court's conclusion that limitations under the Whistleblower Act must be
attacked by summary judgment and, thus, must be nonjurisdictional. The Fourteenth
Court simply did not address the preliminary issue of whether the limitations
provisions are jurisdictional, and we will not presume they are nonjurisdictional
simply because they are often raised in a motion for summary judgment.

 Following Elthon, the Fort Worth Court of Appeals also held that limitations
under the Whistleblower Act must be raised by a motion for summary judgment, not
a plea to the jurisdiction. Castleberry Indep. Sch. Dist. v. Doe, 35 S.W.3d 777, 782
(Tex. App.--Fort Worth, pet. dism'd w.o.j.). As in Elthon, there was no discussion
of whether the limitations provisions of the Whistleblower Act were jurisdictional
(meaning they can be raised by plea to the jurisdiction), nor was there any analysis
of, or citation to, Kazi.

 Finally, in Texas Department of Mental Health and Mental Retardation v.
Olofsson, 59 S.W.3d 831(Tex. App.--Austin 2001, no pet.), the Austin Court of
Appeals, citing Elthon, also held that limitations under the Whistleblower Act were
not grounds for a plea to the jurisdiction. The Olofsson court also cited to Kazi, but
it provided no analysis to show how it concluded that Kazi applied to the case. 59
S.W.3d at 834.

 Because the issue is one of jurisdiction, we are compelled to address whether
Kazi has, in effect, overruled this Court's holding in Hohman. See Protestants v. Am.
Pubs, Inc., 787 S.W.2d 111, 113 (Tex. App.--Houston [1st Dist.] 1990, writ denied)
(holding court has a duty to determine its jurisdiction over a controversy). We must
decide whether, after Kazi, the limitations provisions of the Whistleblower Act are
jurisdictional.

 In Kazi, the plaintiffs, survivors of an Indian citizen, filed a wrongful death
action, basing their claim on section 71.031 of the Texas Civil Practices and
Remedies Code, which permits a suit for the personal injury or wrongful death of a
citizen of a foreign country if the deceased's country has "equal treaty rights" with
the United States. 12 S.W.3d at 71. The defendant, Dubai Petroleum Corporation,
moved to dismiss the suit for lack of subject matter jurisdiction, alleging that India
did not have "equal treaty rights" with the United States. Id. The trial court agreed
and dismissed the suit. Id. The court of appeals concluded that, in order to confer
subject matter jurisdiction on the trial court, plaintiffs had to satisfy all the requisites
of section 71.031. Id. at 76. The court of appeals then held that, because India's
treaty rights were sufficiently similar, the requirements of section 71.031 had been
met. Id. at 75-76. The supreme court affirmed the court of appeals, but for a different
reason. Id. The supreme court held that the statutory prerequisite of establishing
"equal treaty rights" was not a jurisdictional requirement. Id. at 76. The supreme
court reasoned that "[t]he trial court . . . had jurisdiction because a claim for wrongful
death was within its constitutional jurisdiction, not because the plaintiffs satisfied all
the grounds listed in former section 71.031(a)." Id.

 Therein lies the key distinction between this case and Kazi. Unlike wrongful
death, there is no common law Whistleblower cause of action. See Austin v.
Healthtrust, Inc.--The Hosp. Co., 967 S.W.2d 400, 403 (Tex. 1998). Similarly, the
trial court in this case has no "constitutional jurisdiction" in a suit against the State,
absent a waiver of sovereign immunity. See Fed. Sign v. Texas So. Univ., 951 S.W.2d
401, 405 (Tex. 1997) (recognizing that sovereign immunity, unless waived, protects
the State, its agencies, and officials from lawsuits for damages, absent legislative
consent to sue).

 The Whistleblower Act provides as follows:

 A public employee who alleges a violation of this chapter
may sue the employing state or local governmental entity
for the relief provided by this chapter. Sovereign immunity
is waived and abolished to the extent of liability for the
relief allowed under this chapter for a violation of this
chapter.


Tex. Gov't Code Ann. § 554.0035 (Vernon Supp. 2002).


 To "allege a violation" of the Whistleblower Act, "[a] public employee must
initiate action under the grievance or appeal procedures of the employing state or
local governmental entity relating to suspension or termination of employment or
adverse personnel action before suing under this chapter." Tex. Gov't Code Ann.
§ 554.006(a) (Vernon Supp. 2002) (emphasis added). Such a grievance must be
initiated within 90 days from the date the alleged violation occurs or was discovered
by the employee through reasonable diligence. Tex. Gov't Code Ann. § 554.006(b)
(Vernon Supp. 2002).

 In sum, the Whistleblower Act creates the cause of action sued upon (5), provides 
procedural prerequisites for filing suit (6), and then waives sovereign immunity from
suit once those requirements have been met (7). The trial court has no subject matter
jurisdiction over the suit unless the State's sovereign immunity from suit is waived,
and the State's sovereign immunity from suit is not waived unless the statutory
prerequisites for filing suit have been met. As such, this case is distinguishable from
Kazi, in which sovereign immunity was not an issue.

 Furthermore, the Kazi court notes that the failure to establish a statutory
prerequisite goes, in reality, "to the right of the plaintiff to relief rather than to the
jurisdiction of the court to afford it." 12 S.W.3d at 77. The Whistleblower Statute
waives sovereign immunity from suit "to the extent of liability for the relief allowed
under this chapter . . ." Tex. Gov't Code Ann. § 554.0035 (Vernon Supp. 2002). 
If the plaintiff has no right to relief under the statute, because the statutory
prerequisites have not been met, then there is no waiver of immunity by the State, i.e.,
the trial court has no jurisdiction.

 Therefore, we conclude that the statutory prerequisite that the plaintiff in a
Whistleblower action timely initiate a grievance is a jurisdictional requirement, the
failure of which may be challenged by way of a plea to the jurisdiction, and that Kazi
does not overrule this Court's holding in Hohman. 

 We turn now to the merits of TSU's appeal.

 B. Did Carter Timely Initiate a Grievance Against TSU?

 The Whistleblower Act gives plaintiffs 90 days to file a grievance; the 90 days
to file a grievance runs from the date the alleged violation of the Act occurs or was
discovered by the employee through reasonable diligence to file a grievance. See
Tex. Gov't Code Ann. § 554.006(b). Carter initiated the grievance process against
TSU on August 11, 1999. TSU contends that Carter's grievance was untimely
because he knew or should have known of the acts giving rise to his cause of action
by March 12, 1999, the date that he wrote to the State Auditor's office and requested
protection under the Whistleblower Act. Carter responds that the limitations period
did not begin to run until July 30, 1999, the date he was informed that his
appointment as interim comptroller would not be renewed. 

 TSU relies on the case of Schindley v. Northeast Texas Community College, 13
S.W.3d 62, 66 (Tex. App.--Texarkana 2000, pet. denied). In Schindley, the plaintiff
was informed in June 1995 that her employment was being terminated. Id. at 67. 
Nevertheless, the plaintiff did not file suit until April 1996, when she discovered that
a board member had discussed the need to "run her off." Id. The plaintiff argued that
limitations were tolled until she "discovered" that she had, in fact, been terminated
for her whistleblowing activities. Id. The court of appeals disagreed and held that
the limitations period began on June 30, the date the plaintiff was fired. See id.

 Schindley, however, does not stand for the proposition that a plaintiff must
initiate a grievance within 90 days from the date the plaintiff suspects retaliation. In
Schindley, the statute began to run with the alleged violation of the act, i.e., the
plaintiff's termination. Id.

 The real issue in this case is when the alleged violation of the act occurred, or,
more specifically, when was the plaintiff was "suspended or terminated or . . .
subjected to an adverse personnel action in violation of [the Act]." Tex. Gov't Code
§ 554.003(a)(Vernon Supp. 2002). Clearly, the "alleged violation" in this case was
Carter's termination on August 31, 1998, which he became aware of by letter dated
July 31, 1998. There was no "adverse personnel action" triggering Carter's rights
under the Whistleblower statute before that date, though Carter, as early as April
1998, suspected that such action was forthcoming.

 In Hohman v. UTMB, the defendant/hospital pointed to several retaliatory acts
alleged by the plaintiffs to have occurred before their constructive discharge and
argued that limitations ran from these earlier acts. This Court noted that the "alleged
violation" of the act was the constructive discharge itself, not the earlier retaliatory
acts. 6 S.W.3d at 774. Although the present case is not a constructive discharge case,
the reasoning behind Hohman is applicable to the case at hand. Limitations runs from
the date the plaintiff suffers some "adverse personnel action" or discovers through
reasonable diligence that such "adverse personnel action" has occurred. See Tex.
Gov't Code Ann. § 554.003(a) (Vernon Supp. 2002).

 Therefore, we hold that limitations in this case began to run on July 31, 1998,
the date Carter was informed that he was being terminated. As such, we conclude
that his grievance was timely filed and affirm the trial court's order denying TSU's
plea to the jurisdiction.



 Michael Schneider

 Chief Justice


Panel consists of Chief Justice Schneider and Justices Radack and Smith (8).


Publish. Tex. R. App. P. 47.
1. § 
 
 
2. ' §§ - 

3. The Whistleblower Act provides the following limitations provisions: 


 (a) A public employee must initiate action under the grievance or appeal
procedures of the employing state or local governmental entity relating
to suspension or termination of employment or adverse personnel action
before suing under this chapter.


 (b) The employee must invoke the applicable grievance or appeal
procedures not later than the 90th day after the date on which the alleged
violation of this chapter:


 (1) occurred; or


 (2) was discovered by the employee through reasonable diligence.


 Tex. Gov't Code Ann. § 554.006(b) (Vernon Supp. 2002).


 Except as provided by Section 554.006, a public employee who seeks
relief under this chapter must sue not later than the 90th day after the
date on which the alleged violation of this chapter:


 (1) occurred; or


 (2) was discovered by the employee through reasonable diligence.


 Tex. Gov't Code Ann. § 554.005 (Vernon Supp. 2002).
4. 
 
 
 § 
 
5. ' § 
6. ' §§ - 
7. ' § 
8.